UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  v.

**NATHANAEL THOMPSON,** *et al.***,**

      **Defendants.**

Case No. 2:21-CR-173
JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

This matter is before the Court on Defendant Nathanael Thompson's Motion for New Trial (Thompson Mot., ECF No. 141) and Defendant Sanam Ahmad's Renewed Motion for Judgment of Acquittal and Motion for New Trial (Ahmad Mot., ECF No. 142). For the reasons below, the Court **DENIES** both Defendants' Motions.

## BACKGROUND

On September 16, 2021, the Grand Jury returned a three-count indictment against Defendants Nathanael Thompson and Sanam Ahmad. (ECF No. 1.) The Indictment charged each Defendant with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count I), and two counts of health care fraud in violation of 18 U.S.C. § 1347 (Counts II and III). (*Id.*) The Indictment alleged that Defendants conspired to commit and committed health care fraud by defrauding Ohio Medicaid. (*Id.*) The charge stated that Defendants would bill Ohio Medicaid for distributing one version of the drug omeprazole to patients—produced by Major Pharmaceuticals—, while actually dispensing another version—produced by Kirkland Signature or Sam's Club. (*Id.*) Ohio Medicaid would reimburse pharmacies for Major Pharmaceuticals omeprazole, but not for Kirkland or Sam's Club omeprazole. (*Id.*) Accordingly, the Indictment

charged Defendants with fraudulently obtaining millions of dollars of Ohio Medicaid reimbursements. (*Id.*)

After the Government rested its case-in-chief, Thompson orally moved to dismiss the case under Federal Rule of Criminal Procedure 29. (Trial Tr., 1158:16–60:11, ECF No. 152, at PageID # 2071–73.) Ahmad similarly moved under Rule 29. (*Id.* 1162:13–63:4, 1166:19–68:12, 1168:25–70:1.) The Court denied both Thompson's and Ahmad's oral motions, finding that there was sufficient evidence for the case to be submitted to the jury. (Trial Tr., 1161:15–62:9; 1171:20–25.)

On February 27, 2024, a jury returned verdicts finding Thompson guilty on Counts I–III and Ahmad guilty on Counts I–III. (Jury Verdict, ECF No. 136.) Thompson then obtained new counsel. (ECF No. 140.)

On March 12, 2024, Thompson filed a Motion for New Trial (Thompson Mot., ECF No. 141), and Ahmad filed a Renewed Motion for Judgment of Acquittal and Motion for New Trial (Ahmad Mot., ECF No. 142). The Government responded in opposition to Defendants' motions. (Gov. Resp., ECF No. 146.) To permit Thompson's new counsel additional time to learn the history of the case and review the trial transcripts, the Court extended the briefing schedule. (ECF Nos. 155, 158.) Ahmad and Thompson then filed their replies in support of their motions. (Ahmad Reply, ECF No. 159; Thompson Reply, ECF No. 163.) Now this matter is ripe for the Court's review.

## STANDARD OF REVIEW

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict" and a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). In assessing a defendant's challenge to the sufficiency of the evidence under Rule 29, the court must determine

2

"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Reversal of a conviction is warranted 'only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence.'" *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991)). In considering a Rule 29 motion, a court "must not 'weigh the evidence, assess the credibility of witnesses, or substitute its judgment for that of the jury.'" *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994), *cert. denied*, 512 U.S. 1243 (1994). The defendant "bears a very heavy burden" of making his showing. *United States v. Ross*, 502 F.3d 521, 529 (6th Cir. 2007) (citing *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005).

When a defendant moves under Federal Rule of Criminal Procedure 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule does not define interest of justice and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (cleaned up). Rule 33 motions are granted only if the verdict is against "the manifest weight of the evidence." *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018). "Unlike on a Rule 29 motion, which requires that the court view the evidence in the light most favorable to the government, in assessing the manifest weight of the evidence for Rule 33 purposes, 'the trial judge ... take[s] on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice.'" *United States v. Carter*, No. 1:20-CR-62, 2022 WL 2800459, at *2 (S.D. Ohio July 18, 2022) (Cole, J.) (quoting *Mallory*, 902 F.3d at 596). "Generally, such motions are granted only 'in the extraordinary circumstance where the

evidence preponderates heavily against the verdict.'" *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (quoting *United States v. Turner*, 490 F.Supp. 583, 593 (E.D. Mich. 1979), *aff'd*, 633 F.2d 219 (6th Cir. 1980).

## ANALYSIS

First, the Court considers Thompson's Motion for New Trial. Second, the Court considers Ahmad's Renewed Motion for Judgment of Acquittal and Motion for New Trial.

### I. Thompson's Motion for New Trial

In his Motion for New Trial, Thompson first argues that the Government committed prosecutorial misconduct. (Thompson Mot., ECF No. 141, at PageID # 859.) Second, he argues that he is entitled to a new trial due to ineffective assistance of his trial counsel. (*Id.* at PageID # 860, 862.)

#### A. Thompson's Allegations of Prosecutorial Misconduct

Thompson first argues that the Government committed prosecutorial misconduct, such that he is entitled to a new trial. As the parties explain, courts apply a two-part test to determine whether alleged prosecutorial conduct requires a new trial. *United States v. Starghill*, No. 20-5706, 2021 WL 3140316, at *2 (6th Cir. July 26, 2021). First, courts determine whether the prosecutor's conduct was improper. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999); *United States v. Kuehne*, 547 F.3d 667, 687 (6th Cir. 2008). Second, the Court determines whether the improper conduct, if any, was so "flagrant" as to warrant a new trial. *United States v. Krebs*, 788 F.2d 1166, 1176–77 (6th Cir. 1986); *United States v. Eaton*, 784 F.3d 298, 309 (6th Cir. 2015) (citing *Kuehne*, 547 F.3d at 687–88). To determine whether conduct was flagrant and requires a new trial, courts in the Sixth Circuit consider four factors: "'(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were

4

isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.'" *Eaton*, 784 F.3d at 309 (quoting *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002)). If conduct was not flagrant, courts will reverse a conviction and order a new trial "only 'if proof of the defendant's guilt was not overwhelming, the defendant objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury.'" *Kuehne*, 547 F.3d at 688 (quoting *United States v. Stover*, 474 F.3d 904, 915 (6th Cir. 2007)).

Thompson argues that the Government committed prosecutorial misconduct in a few ways. First, Thompson argues that the Government repeatedly used "misleading demonstrative exhibits which fundamentally misrepresented the forensic data gathered by investigators." (Thompson Mot., ECF No. 141, at PageID # 859.) Specifically, Thompson argues that one of the Government's charts was color-coded in a different manner from the other ones, thus suggesting that Thompson dispensed prescriptions that he did not. Thompson also argues that the Government used a "Responsible Pharmacist exhibit" to misrepresent that he committed certain acts at a location that he did not, and that the government used "two completely unrelated columns on a separate spreadsheet to misrepresent that [he] was tacking the drug cost and sales of Costco/Sam's Club omeprazole." (Thompson Mot., ECF No. 141, at PageID # 859.) The Government counters that Thompson's arguments cite no legal authority, factual support, or specific improper statements. (Gov. Resp., ECF No. 146, at PageID # 909.)

Second, Thompson argues that the Government used misleading labels for omeprazole by referring to them as "prescription-grade" or "brand-name." The Government responds by noting that it used the term "Major brand," rather than "prescription grade" or "brand name." (Gov. Resp., ECF No. 146, at PageID # 910.) Additionally, Ahmad's counsel used the term "Major

5

brand" in their own closing arguments. (*Id.*) Thompson does not address the Government's arguments on this point in his reply.

The Court finds that the Government's actions and statements were not improper. First, the charts are not akin to prosecutorial vouching—a more typical "improper" action in cases ordering new trials. *See, e.g.*, *United States v. Rich*, No. 18-2268, 2021 WL 4144059, at *39 (6th Cir. Sept. 13, 2021) (explaining that prosecutorial vouching "occurs when a prosecutor either (1) bluntly states a personal belief in a witness's credibility, thereby placing the prestige of the office of the United States Attorney behind that witness, or (2) implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury"). Finally, the Government's use of "Major brand" in closing arguments was proper. The Government attempted to limit its use of "brand" during trial, and the Government's use of "Major brand" was consistent with the Court's ruling on motions in limine.

Even if the Court considered these actions improper, they do not constitute flagrant acts that demand a new trial. Juries are fully capable of reading the words in a chart and the Court trusts that the jury would not rely on the colors alone and conflate the various charts. *See e.g.*, *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996) ("juries are presumed capable of sorting evidence"). Moreover, the conduct Thompson complains of was isolated to a few instances, not the sort of extensive improper acts which would taint the entire trial. There is no indication that the remarks were deliberate. Finally, there was substantial evidence against Thompson aside from the allegedly "unfair tactics."

For these reasons, the Court finds that Thompson's allegations of prosecutorial misconduct do not require a new trial.

**B.     Thompson's Alleged Ineffective Assistance of Trial Counsel**

Thompson also requests a new trial because he claims his trial counsel was ineffective. As the parties note, whether ineffective assistance of counsel warrants a new trial is governed by the Supreme Court's decision in *Strickland v. Washington.* 466 U.S. 668 (1984). There, the Supreme Court explained that ineffective counsel violates the Sixth Amendment to the United States Constitution if counsel "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. To meet *Strickland*'s standard, a defendant must show that counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's performance was prejudicial to the defense. *Id.* at 688, 692. A defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Finally, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

Thompson argues that his trial counsel was ineffective under *Strickland* for several reasons. He argues that his counsel failed to introduce exonerating evidence, misplaced relevant documents, and failed to renew his motion for acquittal under Federal Criminal Rule 29 at the close of evidence. (Reply, ECF No. 163, at PageID # 2364–65.) Specifically, Thompson argues that he provided his counsel with documents reflecting his attempts to address the concerns raised by investigators during the July 31, 2018 Board of Pharmacy inspection. (Thompson Mot., ECF No. 141, at PageID # 861.) Thompson also provided trial counsel with a "written compliance document" that had been provided to his staff, but his counsel allegedly misplaced the document. (*Id.*) He also argues that trial counsel was ineffective because he did not object to the

7

Government's introduction of protocols unrelated to omeprazole, failed to effectively cross-examine witnesses for whom Thompson had impeachment material, and made other errors involving introduction of evidence that Thompson claims would have exonerated him. (*Id.*)

Thompson further claims that the audio recording of his interview with DEA agents was incomplete, and that his trial counsel informed him on the Friday before trial began that his counsel was "good friends" with the lead investigator in Thompson's case, Michael Flynn. (Thompson Mot., ECF No. 141, at PageID # 862–63; Thompson Reply, ECF No. 163, at PageID # 2369–70.) According to Thompson, this late-disclosed relationship is a potential conflict of interest that could explain the "compromised performance as it pertained to the evidence collected by . . . Michael Flynn." (Thompson Reply, ECF No. 163, at PageID # 2369–70.)

The Government responds by noting that Thompson's motion provides scant facts, and the examples of alleged mistakes by Thompson's trial counsel do not amount to the kind of ineffective performance requiring a new trial. The Government contends that Thompson's trial counsel was effective, as shown by their objections to the Government's chain of custody, successfully objecting to introduction of certain protocol evidence, cross-examining all of the Government's evidence, successfully introducing Thompson's own statements into evidence over the Government's objections, and by giving an opening statement and closing argument. (Gov. Resp., ECF No. 146, at PageID # 903–04.) The Government argues that the decision whether to offer certain evidence is an example of trial counsel's strategic choice, which this Court owes deference. (*Id.* at PageID # 902–03.)

The Government also argues that trial counsel's relationship with Michael Flynn does not amount to a genuine conflict of interest that affected counsel's performance. (*Id.* (citing *Kumar v. United States*, 163 F. App'x 361, 367 (6th Cir. 2006).) As the Government correctly points out,

8

showing that a conflict of interest warrants a new trial requires the defendant to show his counsel had competing obligations, such that the attorney had to favor one interest over the interest of the defendant. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002); *United States v. Gandy*, 926 F.3d 248, 261 (6th Cir. 2019); *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 844 (6th Cir. 2017). Moreover, Thompson never raised the purported conflict with the Court, Flynn never testified at trial, and Thompson does not demonstrate how this "friendship" created a competing obligation for counsel. (Gov. Resp., ECF No. 146, at PageID # 905.)

The Court finds that Thompson's trial counsel was not ineffective, and that Thompson is not entitled to a new trial. Thompson's trial counsel repeatedly objected to the Government's lines of questioning and introduction of evidence, successfully induced the Court to exclude some of the Government's proffered evidence, and probed the Government's witnesses in an attempt to create reasonable doubt. Thompson's allegations that his trial counsel had a conflict of interest is speculative, and the Court need not hold an evidentiary hearing to investigate it further. And while trial counsel allegedly misplacing a potentially useful document is concerning, Thompson does not meet his burden to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As the Government recounts at length, there was significant testimony and evidence of the extent of the fraudulent omeprazole billing practices and Thompson's role in it. (Gov. Resp., ECF No. 146, at PageID # 905–07.) Finally, the undersigned conducted the lengthy trial held in this case, and Thompson's lawyers represented him in a most competent manner.

For these reasons, the Court does not find that Thompson's trial counsel was ineffective. Accordingly, the Court **DENIES** Thompson's Motion for a New Trial.

**II.     Ahmad's Renewed Motion for Judgment of Acquittal and Motion for New Trial**

Ahmad moves for two forms of relief. First, Ahmad argues that the evidence was not sufficient to support her convictions. (Ahmad Mot., ECF No. 142, at PageID # 870.) Second, she argues that the verdicts were against the manifest weight of the evidence. (*Id.* at PageID # 874.) Both of Ahmad's requests are based on a "fatal chain of inferences" from testimony that, according to Ahmad, the jury should have never heard. (Ahmad Mot., ECF No. 142, at PageID # 872.) Specifically, Ahmad argues that the Government relied on FBI Forensic Accountant Andrew Butts's testimony to establish that Thompson paid Ahmad in cash to participate in this conspiracy. (*Id.*)

Butts testified in the Government's case-in-chief on Thompson's personal and business bank accounts and Ahmad's personal bank account. During his testimony, Butts discussed a large cash influx into Ahmad's bank account. The Court held a sidebar with counsel to express its concern that the jury might rely on this uncharged, unindicted conduct to convict Ahmad. (Trial Tr., 1039:6–7, ECF No. 152, at PageID # 1952.) At the end of Butts's testimony, the Court gave the following limiting instruction:

> Before Mr. Butts steps down, I'm going to give you an instruction. And I want to be clear, it's an instruction on forensic accounting, not about Mr. Butts. I think you know this, but I just want to make sure we are clear.
>
> You've heard his testimony. He's gone through a forensic analysis of the accounts maintained by the defendants. He can analyze receipts, disbursements from the various accounts, and he can put them into categories, but I want to talk for just a brief moment about cash transactions. Accountants can measure the amount of cash in, the amount of cash out, and the dates of all of this. But here, and there's no dispute about this, Mr. Butts was not charged and couldn't find the source of the cash. Oftentimes, in other cases, someone else can do that through direct testimony, not the testimony of a forensic accountant, but that's not the case here.
>
> So I want to remind you that the defendants are on trial for three charges: Conspiracy to commit health care fraud; and then Counts 2 and 3, alleged commission of health care fraud. That doesn't mean to say you ignore the cash, but the cash is not what they're charged with. So I want you to not treat that as having

10

anything to do directly with these charges. If it has anything to do with the charges, it's only going to be with regard to inferences that we'll talk about later in the jury instructions when you get those probably in the next day.

(Trial Tr., 1066:7–1067:7, ECF No. 152, at PageID # 1979–80.) The Court gave this limiting instruction to remind the jury that this cash income was not part of Ahmad's indicted activity, and that Butts did not find the source of the cash payments.

After the Government rested its case-in-chief, Ahmad called her brother to the stand to testify to the cash she received. (Trial Tr., 1179:7–1180:13.) Ahmad's brother testified that he had given her more than $100,000 in cash payments since 2017. (*Id.*) Despite her brother's testimony and the Court's limiting instruction, Ahmad contends that Butts's testimony was so prejudicial as to warrant acquittal or a new trial.

A. **Ahmad's Motion for Judgment of Acquittal Based on Insufficient Evidence**

Under Federal Rule of Criminal Procedure 29(c), Ahmad renews her prior oral motion to enter judgment of acquittal. (Ahmad Mot., ECF No. 142.) To succeed in a Rule 29 motion, a Defendant must show that "[no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Here, for the jury to find Ahmad guilty of conspiracy to commit health care fraud under 18 U.S.C. § 1349, the Government had to prove these elements beyond a reasonable doubt:

(A) First, that two or more persons conspired, or agreed, to commit the crime of health care fraud.

(B) Second, that the defendant knowingly and voluntarily joined the conspiracy.

(Jury Instrs., ECF No. 135, at PageID # 795.)

For the jury to find Ahmad guilty of committing health care fraud under 18 U.S.C. § 1347, the Government had to prove these elements beyond a reasonable doubt:

(A) First, that between April 2017 and August 2021, the defendant knowingly and

11

  willfully executed and attempted to execute a scheme to defraud any health care benefit program or obtain, by means of false or fraudulent pretenses, representations, or promises any of the money or property owned by or in the control of a health care benefit program in connection with the delivery of and payment for health care benefits, items, or services.

 (B) Second, that the scheme related to a material fact and included a material misrepresentation or concealment of a material fact.

 (C) Third, that the defendant had the intent to defraud.

 (D) As to Count 2, the Government must prove that as part of a scheme to defraud, a prescription was dispensed on September 28, 2018.

 (E) As to Count 3, the Government must prove that as part of a scheme to defraud, a prescription was dispensed on February 15, 2019.

(*Id.* at PageID # 799.)  The Court must review the evidence in the light most favorable to the Government and deny the Rule 29 motion if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sadler*, 24 F.4th 515, 539 (6th Cir. 2022), *cert. denied sub nom. Tempo v. United States*, 143 S. Ct. 169 (2022). Additionally, the Court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict."  *United States v. Johnson*, 79 F.4th 684, 711 (6th Cir. 2023).

  Ahmad argues that she is entitled to a judgment of acquittal because the Government relied on a "fatal chain of inferences" based on testimony the jury should have never heard.  (Ahmad Mot., ECF No. 142, at PageID # 872.)  Specifically, Ahmad argues that the Government relied on FBI Forensic Accountant Andrew Butts's testimony to establish that Thompson paid Ahmad in cash to participate in this conspiracy. (*Id.*)  This testimony, according to Ahmad, should have been excluded because its probative value was substantially outweighed by unfair prejudice.  (*Id.* at PageID # 873 (citing Fed. R. Evid. 403).)  Ahmad contends that the jury would have reached a different result had it not heard evidence of these cash deposits.  (Ahmad Reply, ECF No. 159, at PageID # 2306.)

The Government counters that the evidence presented in its case in chief was sufficient for a reasonable jury to convict. (Gov. Resp., ECF No. 146, at PageID # 892–96.) The Government argues that evidence at trial established that Ahmad was an experienced and knowledgeable manager for the Thompson Pharmacies, made decisions about scheduling and employment alongside Thompson, trained employees on the pharmacy software—"RX30"—used to request reimbursements from Ohio Medicaid, and directed employees to request reimbursements for one type of omeprazole while dispensing another. (*Id.* at PageID # 893–94.) The Government further cites testimony and evidence that Ahmad replenished the pharmacies' omeprazole supply by purchasing bulk amounts of omeprazole from Costco and Sam's Club with a credit card associated with Thompson Pharmacies. (*Id.*) Finally, the Government argues that "[b]ased on the totality of the evidence, including the lack of other sources of wage information, any conclusion by the jury that the cash deposits were evidence of Defendant Ahmad's intent to defraud was reasonable." (Gov. Resp., ECF No. 146, at PageID # 896.)

The Government contends that the Court properly admitted the cash evidence and testimony from Butts. The Government reasons that the cash evidence was "sudden wealth evidence" introduced to show Ahmad's motive. (Gov. Resp., ECF No. 146, at PageID # 898.) It argues that such sudden wealth evidence is admissible if "(1) there is other credible evidence, direct or circumstantial, of the illegal activity; (2) the money spent was not available to the defendant from a legitimate source; and (3) the accumulation of great wealth or extravagant spending relates to the period of the alleged illegal activity." *United States v. Jackson-Randolph*, 282 F.3d 369, 378 (6th Cir. 2002). As the Government notes, if these three elements are present, evidence is "properly admitted to demonstrate, not just motive, but also a likelihood that the extra wealth came from illegitimate sources and to support an inference that the defendant committed

13

the alleged crime." *Id.* The Government contends that Ahmad's illegal activity was established, and that her earnings from employment at Thompson Pharmacies fell far short of her spending during the conspiracy. (Gov. Resp., ECF No. 146, at PageID # 899.) And even though Ahmad's brother testified that he gave Ahmad the cash, "the jury's verdict indicated they weighed his credibility and chose to discount his testimony." (*Id.*)

Ahmad counters that "sudden wealth evidence" is admissible only if the Court can determine whether such wealth came from illegitimate sources. "The relevance of this evidence is to create 'the inference that the defendant does not possess a legitimate source of income to support his affluent lifestyle and, therefore, the income must originate from [an unlawful source.]'" *Jackson-Randolph*, 282 F.3d at 377 (quoting *United States v. Carter*, 969 F.2d 197, 201 (6th Cir. 1992)). However, if the sudden wealth leads the jury to make class-based distinctions, the evidence is unfairly prejudicial and inadmissible. *Id.* at 376. Ahmad argues that here, unlike in *Jackson-Randolph*, she offered credible evidence about the legitimacy of the cash deposits through her brother's testimony. (Ahmad Reply, ECF No. 159, at PageID # 2304.) She states that the cash testimony is particularly prejudicial because "the Government conceded that it did not have sufficient evidence to show that the cash deposits came from Mr. Thompson or his businesses, but it still elicited testimony from its forensic accountant, Andrew Butts, to suggest that Mr. Thompson was the source of the cash deposits found in Ms. Ahmad's account." (*Id.* at PageID # 2304–05.) Thus, according to Ahmad, the cash deposit testimony solicited improper inferences and encouraged the jury to make class-based distinctions.

The Court is persuaded by the Government's arguments. Contrary to Ahmad's argument, even without Butts's testimony identifying unexplained cash deposits—which Ahmad's brother later testified he gave to her—there was sufficient evidence for a rational trier of fact to find the

14

essential elements of the charged crimes beyond a reasonable doubt. There was testimony from Latasha Poindexter, who said that she had to report to Ahmad how much money the pharmacy made or how many prescriptions they filled. (ECF No. 150, at PageID # 1371.) Poindexter testified that Ahmad would bring omeprazole from Sam's Club, the pharmacy would dispense that omeprazole, and insurance would reimburse the pharmacy for one version of omeprazole despite distributing another. (*Id.* at PageID # 1371–74.) She also testified that Ahmad told her this practice needed to occur because it made the pharmacy more money. (*Id.* at PageID # 1374–75.) Thus, according to Poindexter's testimony, Ahmad was acting to benefit another. Additionally, as this Court expressed at sidebar during trial, motive is baked into the case. (Trial Tr., 1061:12–13, ECF No. 152, at PageID # 1974.) Evidence of Ahmad's cash influx was introduced for her motive. Finally, any unfair prejudice imposed on Ahmad was remedied by the Court's limiting instruction.

For these reasons the Court **DENIES** Ahmad's renewed motion for judgment of acquittal.

### B. Ahmad's Motion for New Trial

Ahmad also argues that Mr. Butts's testimony requires a new trial. (Ahmad Mot., ECF No. 142, at PageID # 874.) She argues that the Government, through Mr. Butts's testimony, "encouraged the jury to rely on facts that constituted a new criminal offense—money laundering, for example—that went well beyond the scope of the Indictment." (*Id.* at PageID # 877.) Thus, she argues, Mr. Butts's testimony constituted a variance from the indictment. (*Id.* at PageID # 874–75.)And Ahmad argues that the verdicts were against the manifest weight of the evidence. (*Id.* at PageID # 877.)

"A variance occurs when the charging terms of the Indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the Indictment." *United States v. Hughes*, 505 F.3d 578, 587 (6th Cir. 2007). And in considering whether to order a new

trial, the Court can independently weigh the evidence and consider credibility of witnesses. *Mallory*, 902 F.3d at 596. The Court will only grant Rule 33 motions for "extraordinary circumstances where the evidence preponderates heavily against the verdict." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988).

The Government argues that the weight of evidence supports the jury's verdicts. (Gov. Resp., ECF No. 146, at PageID # 896.) The Government recounts several areas of evidence from the trial, including: Ahmad training employees to submit insurance claims coded for Major Pharmaceuticals Omeprazole, directing employees to dispense omeprazole alongside certain drug prescriptions whether or not there was a prescription for omeprazole, purchasing Sam's Club omeprazole for the Thompson Pharmacies using Thompson's credit card, and agreeing to abide by the rules and regulations relating to Ohio Medicaid.

The Government offered the cash-related testimony to establish Ahmad's intent to defraud. (Gov. Resp., ECF No. 146, at PageID # 900.) Any unfair prejudice created by Mr. Butts's testimony, according to the Government, was eliminated by the Court's jury instruction immediately after his testimony. (*Id.*, at PageID # 897, 899–900.) Ahmad argues that, but for the cash evidence, the jury would not have convicted her. (Ahmad Reply, ECF No. 159, at PageID # 2306.) Further, she argues that the Court's limiting instruction after Butts's testimony could not cure the prejudice created by the questioning. (Ahmad Reply, ECF No. 159, at PageID # 2306.)

The Court is not persuaded by Ahmad's arguments. The manifest weight of the evidence pertained to the typical operations at Thompson Pharmacies, Ahmad's role in training employees, Ahmad's conversations with employees concerning omeprazole billing practices, and Ahmad's purchase of bulk amounts of omeprazole from Sam's Club—not the cash deposits which Ahmad

challenges. The Court's limiting instruction made clear that the cash deposits were not charged conduct, and the instruction cured any perceived prejudice.

For these reasons, the Court **DENIES** Ahmad's motion for a new trial.

## CONCLUSION

Based on the above, the Court **DENIES** Defendant Nathanael Thompson's Motion for New Trial (ECF No. 141) and **DENIES** Defendant Sanam Ahmad's Renewed Motion for Judgment of Acquittal and Motion for New Trial (ECF No. 142).

The Clerk is **DIRECTED** to set this matter for Sentencing.

**IT IS SO ORDERED.**

**7/29/2024**　　　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**